## 19071.   CITY NATIONAL BANK AND TRUST COMPANY OF MIAMI *v.* ORR *et al.*

JENKINS, P. J.   1.   The general rule governing broker's commissions is that they "are earned when, during the agency, he finds a purchaser ready, able, and willing to buy, and who actually offers to buy on the terms stipulated by the owner." Civil Code (1910); § 3587. In the absence of an agreement to the contrary, the owner is not deprived of the right to sell the property himself, and therefore ordinarily does not become liable to the broker for commissions upon a sale negotiated by himself. But since the utmost good faith must be exercised between the owner and the broker   (*Moore* v. *May,* 10 *Ga. App.* 198, 73 S. E. 29; *Washington* v. *Jordan,* 28 *Ga. App.* 18 (3), 109 S. E. 923), the owner can not, with knowledge of negotiations pending between the broker and the prospective purchaser, defeat the right of the agent to commissions by interfering with and himself closing a sale of which the agent was the procuring cause; nor can he defeat the broker's claim for commissions by resorting to any subterfuge, such as a pretended conveyance to a third person, while still retaining control of the property, in order that the title might be acquired by the customer procured by the broker through such third person. 9 C. J. 620.

2.   "Where property has been listed for sale with two or more real-estate brokers, and one of them, with the knowledge of the owner, has interested a customer in the purchase, and, while negotiations with the broker are still pending, the owner proceeds to close the sale with the same customer through another broker, the latter being the first to present the customer as ready, able, and willing to buy, and actually offering to buy, at the price and on the terms stipulated by the owner; and where the owner, pending such negotiations, has committed no act of bad faith, the efforts of the broker thus actually closing the trade can not be regarded, as a matter of law, as the procuring cause of the sale, so as to exclude the claim of the other broker against the owner for commissions." Under such circumstances, it becomes a question of fact as to which broker was the procuring cause of the sale. *Gresham* v. *Lee,* 152 *Ga.* 829 (111 S. E. 404).

3.   In a case where there was proof in behalf of the broker that he had interested the president and the secretary of a trust corporation in the purchase of a lease listed with him for sale, and where there was proof in behalf of the owner of the lease going to show that the owner had transferred the lease to another and different person, who thereafter

was induced by the owner to relinquish, for a valuable consideration, his rights and interest in it in favor of a mortgage company which had for its officers the same persons that were officers of the trust corporation, including the president and the secretary with whom the broker had dealt in his negotiations with the trust company for the sale of the lease, and where there was evidence in behalf of the broker tending to indicate that the intervening transfer by the owner to the person referred to was not bona fide, but was made pending the negotiations between the broker and his prospective purchaser, and with knowledge by the owner of such negotiations, and that the intervening transaction was a mere subterfuge by which the owner sought to take advantage of the efforts of the broker in finding a customer, without being liable for commissions, the question for the jury to determine, as they were in fact instructed by the court to do, was whether or not the broker was the procuring cause of the sale, on the theory that the owner could not be permitted to appropriate the broker's services in interesting the two officers of the trust company, by itself effecting a sale through the same persons, as identical officers of the mortgage company, still, before the jury would be authorized to find that the broker was the procuring cause of the sale, they would have to determine that the intervening transfer by the owner to the outside individual was not a bona fide transaction such as would terminate the broker's agency and preclude any right on his part to commissions. Consequently, it amounted to an expression of opinion by the court to charge the rule in the *Gresham* case, quoted in paragraph 2 above, without making it clear that the rule thus stated would apply only in the event that the life of the broker's contract of listment had not been terminated by a previous bona fide sale by the owner to a different person.

4. The charge of the court in the language of the code, setting forth the general rule governing broker's commissions, as stated at the beginning of the first division of the syllabus, was not applicable in and of itself to the contentions and evidence in the case, since the broker did not seek to prove that he was entitled to commissions by virtue of having procured a purchaser ready, willing, and able to buy, and who in fact offered to buy on the terms listed, but his case is grounded, by his evidence, upon the conduct of the owner in interfering with a purchaser interested by him and closing a sale of which the broker was the procuring cause. But since the court charged this as the real contention of the broker, the giving of the code-section did not operate to mislead, but only made more clear the law governing the point at issue between the parties. The charge in other respects is clear, correct, and fair, and is not subject to any of the remaining exceptions taken thereto.

5. The contention of the plaintiff in error that the verdict should not be allowed to stand, in that there is a fatal variance between the allegations of the broker's pleadings claiming compliance with the code-section governing broker's commissions and his proof seeking to show interference by the owner with the prospective purchaser procured by the broker, is not well founded, since the evidence on which he seeks to sustain the verdict in his favor was admitted without objection, and his pleadings might have been amended so as to authorize such proof. *Napier* v. *Strong*, 19 *Ga. App.* 401 (2) (91 S. E. 579).

6. The testimony of the broker recounting a conversation between himself and the person who was president of the trust company and of the mortgage company, had subsequent to the final transfer of the property, in which the latter stated to the broker that the owner was due the broker commissions on the sale as made to the mortgage company, was inadmissble, and the objection to such testimony should'have been sustained. *Judgment reversed. Stephens and Bell, JJ., concur.*

DECIDED JANUARY 22, 1929.

REHEARING DENIED FEBRUARY 22, 1929.

*W. A. Slaton,* for plaintiff. *B. W. Forlson,* for defendants.

ON MOTION FOR REHEARING.

JENKINS, P. J. This was a suit by the bank against the broker on a promissory note, to which suit the broker filed a counter-claim for the real-estate commissions dealt with in the foregoing decision. The case went to trial on the pleadings made by the suit on the note and the counter-claim, without it being incumbent upon the bank to plead to the defense made by the counter-claim. The court below found in favor of the broker on his counter-claim. Counsel for the defendant in error (the broker) filed in this court a motion for a rehearing, in which he contended that our ruling to the effect that the court erred in giving in charge to the jury the rule of law laid down by the Supreme Court in the *Gresham* case, supra, "without making it clear that the rule thus stated would only have application in the event the life of the broker's contract of listment had not been terminated by a previous bona fide sale by the owner to a different person," brought into the case a theory of defense to the broker's claim for commissions which the record does not present, either by the pleadings, the evidence, or the assignments of error. It is true that the pleadings by the bank consisted merely of its petition on a promissory note, since it was not required to make, and did not file, any written defense to the defendant's counter-claim. Under our practice, a plaintiff is not required to file a replication to the answer, but is permitted, without further pleading, to introduce proof either in denial or in avoidance of the matters set up as a defense. Civil Code (1910), §§ 5573, 5651; *Henry* v. *Peters,* 5 *Ga.* 311; *Tifton &c. Ry Co.* v. *Butler,* 4 *Ga. App.* 191, 195 (60 S. E. 1087). It is also true that the only witness offered by the bank testified that he did not know the broker in the lease transac-

tion until after the consummation of the intervening lease; but, so far as we are able to ascertain from the record, there was no testimony in behalf of the bank that actually disputed the broker's evidence establishing the original contract of listment, and the bank did introduce evidence for the purpose of showing the intervening sale referred to in the decision, and the broker did introduce evidence tending to indicate that the transaction was not bona fide, but a fraudulent subterfuge, by which the bank sought to take advantage of the broker's efforts in interesting the persons who finally consummated the purchase of the lease. Accordingly, it appears from the evidence disclosed by the record that one of the main contested issues related to the existence and validity of the intervening sale; and consequently the exception taken to the charge indicated in the third division of the decision, that it amounted to an expression of opinion upon one of the disputed issues, is well taken, since a bona fide intervening sale, if established, would have amounted to a complete defense to the broker's claim, and the charge given must, therefore, have assumed that there was a failure to sustain this defense.                    *Rehearing denied.*