### 33752. TOMLIN *v.* BICKERSTAFF.

DECIDED DECEMBER 4, 1951.

*Poole, Pearce & Hall,* for plaintiff in error.
*Claude Hambrick, James M. Roberts,* contra.

WORRILL, J. (After stating the foregoing facts.) Ground 4 of the amended motion for a new trial assigns error upon the following charge: "If you find for the plaintiff, the form of your verdict would be, 'We, the jury, find for the plaintiff so many dollars,' filling in the amount which in this case, as I have previously instructed you, must be an amount not in excess of

the amount of $1463.32. And I instruct you, gentlemen, that in view of the pleadings in this case, that would be the only amount which you could find for the plaintiff. In other words, your verdict must be either for the plaintiff in the amount of $1463.32, or for the defendant, and in giving that instruction again the court repeats that statements as to amounts or anything else are statements of the contentions of the parties, and not a statement of opinion on the part of the court." Movant contends that the above limitation by the charge was erroneous in that the effect of the purchase by and a conveyance of the property to these tenants in common was to give each title to a one-third undivided interest in the property and that the legal effect of such sale was the same as if each of the parties had been sold a one-third undivided interest in the property. Movant contends that it was legally possible for the efforts of the plaintiff to have been the procuring cause of the sale of a one-third interest, or two one-third interests, without such efforts being the procuring cause of the sale of the other interest. Movant further contends that there was evidence from which the jury could have found that the plaintiff's efforts were not the procuring cause of the sale of the interest to J. Strom Thurmond or the interest to Mrs. Elizabeth T. Thurmond, and that the court erred in limiting the jury to finding that the plaintiff was entitled either to the full commission or to no commission. Where an agent procures a purchaser for property and such purchaser procures others who join him in jointly purchasing the property, the agent who procured the first purchaser is entitled to his full commission (*Williams* v. *Selph & Daniels*, 29 *Ga. App.* 38, 113 S. E. 245), upon proof that either he sold the property or was the procuring cause (*Edwards* v. *Andrews Bros.*, 24 *Ga. App.* 645, 101 S. E. 775). The undisputed evidence shows that on October 5, 1950, T. G. Tarver signed a contract, with his name and his daughter's (Mrs. Elizabeth T. Thurmond), to buy the property and gave a check for $5000. He died on October 7, before the check was drawn. New arrangements were made and the property was bought jointly by the estate of T. G. Tarver, Mrs. Elizabeth T. Thurmond, and her brother-in-law, J. Strom Thurmond. The record shows that the evidence demanded a finding that Tarver brought his daughter, Mrs. Elizabeth T. Thurmond, and her

brother-in-law, J. Strom Thurmond, into the transaction. Mrs. Thurmond testified by interrogatories as follows: "I did not participate in the negotiations for this Spring Street property. My father, T. G. Tarver, and my brother-in-law, J. Strom Thurmond, handled it." There is no evidence whatever to indicate that she came in as an independent purchaser. It is clear that she was procured by her father. The evidence shows that J. Strom Thurmond was also brought in by Tarver. Tarver and Thurmond had been associated together in other transactions. Pertaining to this transaction the defendant testified: "He [Tarver] came back to Atlanta and closed for the Decatur property the following week, I think, and called Governor J. Strom Thurmond over to look at the Spring Street property with him. They decided to offer at that time. I had seen Strom Thurmond before that. He had been up here at Mr. Tarver's request to O. K. the Decatur property, see whether he would O. K. it or not. . . So, Mr. Beall, the executor of his estate, vice-president of the C & S Bank in Augusta, and Mr. J. Strom Thurmond, asked me to meet with them and Mrs. Thurmond and Mrs. Tarver in Augusta, which I did, and it was at that time that they decided to go on through with the deal if I could get the loan and lease the stores." If the plaintiff was the procuring cause of the sale to Tarver, he was the procuring cause of the entire sale. The charge is not error for any of the reasons assigned. The pleadings and evidence would authorize only two findings, either that the plaintiff was the procuring cause of the sale and entitled to the full commission or that he was not the procuring cause of the sale and not entitled to any commission.

■ The general grounds are without merit. To earn a commission on account of the sale of property an agent must either have sold it or have been the procuring cause of the sale. *Edwards v. Andrews Bros.*, supra. When the agent contends that he was the procuring cause, the fact that he sold other property for the same principal to the same purchaser is not sufficient (*Doonan v. Ives*, 73 *Ga.* 295), but he does make out a prima facie case when he shows that negotiations for the sale were set on foot through his efforts, that he performed every service required by his employment which it was possible to perform, and that the

failure on his part to personally consummate the trade was due to the interference of the defendant. *Gresham* v. *Connally*, 114 *Ga.* 906, 909 (41 S. E. 42). At the trial the plaintiff testified that: He had done a favor for Mr. Miller, the owner of the Spring Street property and Mr. Miller promised to let him have the exclusive sale of the property. While selling stock in Augusta he called on Dr. J. W. Thurmond, who said that he and his father-in-law were very much interested in real estate. Dr. Thurmond arranged for. his father-in-law, T. G. Tarver, and plaintiff to get together. He talked to Tarver about several pieces of property and then told him about the Spring Street property, which wasn't ready then, but told him he would show the property at the proper time. Tarver telephoned J. Strom Thurmond from Dr. Thurmond's office and talked to him about the property. Later, in Atlanta, he called Mr. Miller, but Mrs. Miller told him that he had died and that Harvey Hill was the administrator of the estate. He went to Hill's office and got information and made drawings of the property. He gave Tarver a diagram of the properties and a break-down of figures on income. The defendant told him that he (defendant) would personally handle Tarver and the transaction, that he could do it better. The defendant kept Tarver and the Thurmonds away from him and completed the transaction himself. W. M. Parker testified that he talked to the defendant about Tarver and the defendant said that the plaintiff had run into a very good customer for the firm who had a considerable amount of money to invest and that he wanted to handle all details and keep the plaintiff in the background. Harvey Hill testified that the plaintiff came to his office before he knew about the Tarver transaction, and got a listing and copied some maps of the property; that he came in again in connection with the property, but that he didn't say anything about whom he had for a purchaser. "After a verdict, the evidence is construed most favorably to the prevailing party, and every presumption and inference is in favor of the verdict." *Bowie Martin Inc.* v. *Dews*, 73 *Ga. App.* 73 (2), (35 S. E. 2d, 577). "This court, by the constitutional amendment creating it, is limited in jurisdiction to the correction of errors of law alone, and therefore has no power to grant a new trial on the ground that the verdict is

strongly contrary to the weight of the evidence, if there is any evidence at all to support it." *Edge* v. *Thomas*, 9 *Ga. App.* 559 (71 S. E. 875). Although the evidence is conflicting and the jury could have returned a contrary verdict, it is sufficient to show that the plaintiff was the procuring cause of the sale and that the defendant's interference prevented him from finishing his services and consummating the sale. The evidence author-ized the verdict, it was approved by the trial judge, and there were no errors of law, so this court has no power to grant a new trial.

*Judgment affirmed. Sutton, C.J., and Felton, J., concur.*